# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mohamed Ali Hammad, V.M.D.,   :
  :
      Petitioner   :
  :
      v.   : No. 2421 C.D. 2014
  : Submitted: August 14, 2015
Bureau of Professional and   :
Occupational Affairs, State   :
Board of Veterinary Medicine,   :
  :
      Respondent   :


BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


**OPINION BY**
**SENIOR JUDGE COLINS**           **FILED: September 10, 2015**


Mohamed Ali Hammad, V.M.D., (Petitioner), *pro se*, petitions for review of the May 29, 2013 final order of the State Board of Veterinary Medicine (Board) adopting the proposed adjudication and order of the Hearing Examiner as the final adjudication and order of the Board. In adopting the Hearing Examiner's proposed order, the Board assessed a civil penalty of $5,000, and suspended Petitioner's veterinary license for two (2) years, stayed in favor of six (6) months active suspension and eighteen (18) months of probation. Before this Court, Petitioner argues that he was denied an opportunity to present his case before the Board. We conclude that the Board followed proper procedure in adjudicating this matter and that Petitioner was afforded due process of law. Therefore, we affirm the order of the Board.

On June 29, 2012, a prosecuting attorney for the Department of State (Department) issued an eight (8) count order to show cause alleging that Petitioner had violated the Veterinary Medicine Practice Act[1] (Act) and regulations promulgated by the Board pursuant to the Act. (Order to Show Cause, Counts ¶¶1-8, Reproduced Record (R.R.) at 7a-18a.) The order to show cause alleged that Petitioner violated the recordkeeping[2] and professional conduct regulations[3]

---

[1] Act of December 27, 1974, P.L. 995, No. 326, *as amended*, 63 P.S. §§ 485.1-485.33.

[2] Section 22 of Chapter 31 of the Pennsylvania Code regulates Recordkeeping by veterinarians licensed under the Act and provides, *inter alia*:

> Veterinary medical records serve as a basis for planning patient care and as a means of communicating among members of the veterinary practice. The records furnish documentary evidence of the patient's illness, hospital care and treatment and serve as a basis for review, study and evaluation of the care and treatment rendered by the veterinarian. A veterinary medical record shall be kept in a problem-oriented or similar format that allows any veterinarian, by reading the record, to proceed with the care and treatment of the patient and allow the Board or other agency to determine the advice and treatment recommended and performed. This section does not apply to laboratory animal practice.
>
> (1) Record required. A veterinarian shall maintain a separate veterinary medical record for each patient, herd or group, as appropriate, which accurately, legibly and completely reflects the evaluation and treatment of the patient or patients. The veterinary medical record must identify the treating individual after each chart entry.
> ***
> (3) Minimum content of record. Production animal veterinarians shall comply with all Federal recordkeeping requirements, including requirements in 9 CFR (relating to animals and animal products). Veterinary medical records for other animals must include:
> (i) Vaccination history.
> (ii) Previous medical history, presenting symptoms and complaint.
> (iii) Date of each examination.
> (iv) Diagnosis.
> (v) Results and findings of pathological or clinical laboratory examination.
> (vi) Findings of radiological examination.
> (vii) Medical or surgical treatment.
> (viii) Other diagnostic, corrective or therapeutic procedures.

2

promulgated by the Board, and was subject to discipline under Section 21(1) of the Act for "[w]ilful or repeated violations of any provisions of this act or any of the rules and regulations of the [B]oard"; under Section 21(11) of the Act for "[i]ncompetence, gross negligence or other malpractice, or the departure from, or failure to conform to, the standards of acceptable and prevailing veterinary medical practice, in which case actual injury need not be established"; and under Section 21(12) of the Act for "[e]ngaging in practices in connection with the practice of veterinary medicine which are in violation of the standards of professional conduct as defined herein or prescribed by the rules of the board." 63 P.S. § 485.21(1), (11), (12); 49 Pa. Code §§ 31.22(1), (3), (9) and 31.21(8)(e).

On July 19, 2012, Petitioner filed an answer denying each of the allegations made in the order to show cause and requesting a copy of the complaint

---

> (ix) Documentation of drugs administered, prescribed or dispensed, including dosage.
> (x) Documentation of surgical and dental procedures, including type and dosage of anesthesia, and dental charting.
> ***
> (9) Veterinary medical records for vaccination clinics. A veterinarian providing veterinary medical services to the public for a public health vaccination clinic or an animal health vaccination clinic shall prepare a veterinary medical record that includes, at a minimum, an identification of the client and patient, the vaccine lot number, and the date and dosage administered. A veterinarian who provides veterinary medical services to a vaccination clinic shall provide a means for clients to obtain advice pertaining to postvaccine reactions for the 24-hour period immediately following the time of vaccination.

49 Pa. Code § 31.22(1), (3), (9).

[3] The Rules of Professional Conduct for veterinarians licensed under the Act provide under Principle 8, subsection (e) that "Veterinarians shall dispense or administer only drugs, including prescription drugs, that are within the expiration date specified by the manufacturer, and shall dispense or administer only drugs that will not expire within the prescribed treatment period." 49 Pa. Code § 31.21(8)(e).

3

made against him,[4] as well as a hearing and the presence of the complainant at the hearing. (Respondent's Answer to Order to Show Cause, R.R. at 27a.) Petitioner also filed a motion to dismiss on July 19, 2012 in which he stated that the allegations were without foundation, that the prosecuting attorney for the Department ignored his February 20, 2012 letter to the Board explaining his good faith error and the steps he has taken to bring his practice into compliance with the Board's regulations regarding use of unexpired medications, and that the prosecuting attorney for the Department was acting out of prejudice because Petitioner is Muslim. (Respondent's Motion to Dismiss, R.R. at 32a; Letter to Investigator Larry Clinkscale, R.R. at 28a.)

On August 6, 2012, the Board issued an order denying Petitioner's motion to dismiss and delegating the matter to a Hearing Examiner to conduct a formal hearing and to issue a proposed adjudication and order. (Board Order 08/06/12, R.R. at 41a.) On August 13, 2012, a Notice of Hearing for October 22, 2012 was mailed to Petitioner. (Notice, R.R. at 43a.) On August 30, 2012, the Department filed a motion for a continuance because its expert witness was unavailable to testify on October 22, 2012. (Motion to Continue, R.R. at 45a.) On September 14, 2012, the Hearing Examiner granted the Department's request for a continuance. (Order Continuing Hearing, R.R. at 51a.) On September 17, 2012, Petitioner filed a Motion to Deny the Continuance and Petitioner mailed a letter to the Hearing Examiner initially assigned to this matter stating that he would not be attending the hearing. (Letter to Hearing Examiner, R.R. at 44a.) On October 11,

---

[4] Due process requires that Petitioner be given notice and an opportunity to be heard, as well as the opportunity to confront and cross-examine adverse witnesses, but the Department is not required to provide Petitioner with a copy of the complaint that initiated its investigation. *Pastore v. Commonwealth, Insurance Department*, 558 A.2d 909, 913-914 (Pa. Cmwlth. 1989).

4

2012, a Notice of Rescheduled Hearing for November 19, 2012 was mailed to Petitioner. (Rescheduled Notice, R.R. at 50a.)

The hearing was held before the Hearing Examiner on November 19, 2012. (Hearing Transcript (H.T.), Supplemental Reproduced Record (S.R.R.) at 31b-74b.) The Department presented the testimony of Brenda Crosby, owner of a female light brown Yorkshire Terrier known as "Cinnamon" for which Petitioner provided veterinary care; Larry Clinkscale, investigator for the Department, Bureau of Enforcement and Investigation; and, as an expert in veterinary care, Alan A. Kirkmayer, D.V.M.. (H.T. at 9, 25, 32, S.R.R. at 36b, 52b, 59b.) The Department also admitted into evidence, *inter alia*, the health and vaccination records of Cinnamon that Petitioner produced during the Department's investigation, a hand-written letter on Petitioner's stationary addressed "to whom it may concern" and signed by Petitioner that stated heartworm medicine could still be effective up to 6 months after its expiration date, and an expert report prepared by Dr. Kirkmayer. (H.T. at 32, 45, Exhibits F, G & K, S.R.R. at 59b, 72b, 78b, 80b-83b, 87b.) Petitioner did not appear for or participate in the hearing before the Hearing Examiner.

On February 28, 2013, the Hearing Examiner issued a proposed adjudication and order with findings of facts, conclusions of law, and a lengthy discussion recommending that Petitioner be subject to disciplinary action because each allegation in the order to show cause was proven by substantial evidence. (Hearing Examiner Proposed Adjudication and Order (A&O), S.R.R. at 4b-28b.) On March 7, 2013, the Board issued a Notice of Intent to Review the proposed adjudication and order and, on March 16, 2013, Petitioner filed exceptions to the proposed adjudication and order and requested a hearing before the Board. (Notice

of Intent to Review, R.R. at 60a; Respondent Brief, R.R. at 62a-63a; Letter Request for Hearing, R.R. at 64a.) The Board issued its final order adopting the proposed adjudication and order on May 29, 2013, including, *inter alia*, the following findings of fact:

5. [Petitioner] examined a dog, Cinnamon, a female light brown Yorkshire terrier owned by Brenda Crosby, on an initial visit on March 16, 2011. (N.T. 11; Exhibit G)

6. Ms. Crosby brought Cinnamon to [Petitioner] for veterinary care for a possible ear infection. (N.T.10 -11)

7. [Petitioner's] veterinary medical records for Cinnamon for March 16, 2011 do not contain a history, presenting problem or findings on physical examination, including weight or vital signs. (Exhibit G)

8. [Petitioner's] veterinary medical records indicate "ear cleaning, ear ointment" for Cinnamon's March 16, 2011 appointment. (Exhibit G)

9. [Petitioner's] March 16, 2011 veterinary medical records for Cinnamon do not contain the following:

   a. A description of the underlying medical problem, which ear was being treated, history of the problem, suspected or known cause of the problem, the ointment used and the reason for the administration of Cephalexin;

   b. An evaluation of the patient, including the presenting problem, physical findings and treatment plan;

   c. The dosage and instructions for the use of Cephalexin;

   d. The name of the ear ointment, instructions for use and dosage;

   e. The signature or initials identifying the treating veterinarian;

6

f.  A vaccination history;

g.  The previous medical history; and

h.  The diagnosis.

(N.T. 37-40; Exhibits G and K)

10.  On May 6, 2011, Ms. Crosby brought Cinnamon to [Petitioner] for her annual vaccinations.  (N.T. 14; Exhibit G)

11.  [Petitioner's] veterinary medical records for the May 6, 2011 appointment state that [Petitioner] administered DHLLP, rabies and Lyme disease vaccinations, and dispensed "H-W tablet 28" and "Rymadyl[5] 1/4 BID."  (Exhibit G)

12.  [Petitioner's] May 6, 2011 veterinary medical records for Cinnamon do not contain the following:

a) A description of the underlying medical problem for which Cinnamon was being seen and the reason for dispensing Rimadyl;

b) An evaluation of the patient, including the presenting problem, physical findings and treatment plan;

c) The dosage and instructions for the use of Rimadyl;

d) The name and brand of the heartworm medication, strength, or instructions for use;

e) The duration of action of the vaccinations administered, when booster vaccinations are needed, and the manufacturer and/or lot number of the vaccines;

---

[5 This is footnote No. 3 in the adopted findings of fact:] The correct spelling of the medication is Rimadyl[.]

7

f) The signature or initials identifying the treating veterinarian;

g) A vaccination history;

h) A previous medical history; and

i) The diagnosis.

(N.T. 40 -41; Exhibits G and K)

13. A blood test is required prior to prescribing and dispensing heartworm medication to a dog to ensure that the dog is not infected with the parasite. (N.T. 40-41; Exhibit K)

14. [Petitioner] failed to perform a blood test or to ensure that a blood test was performed prior to prescribing and dispensing heartworm medication to Cinnamon. (N.T. 40-41; Exhibits G and K)

15. Rimadyl is a non-steroidal anti-inflammatory drug (NSAID). (N.T. 41; Exhibit K)

16. Blood work is required prior to prescribing Rimadyl to ensure that the dog is healthy before administering the medication. (N.T. 41; Exhibit K)

17. Rimadyl can affect the bone marrow, liver, and kidneys of a dog, and it is standard of care to do follow-up blood work every six months if a dog is prescribed Rimadyl on a daily basis to make sure there are no adverse effects. (N.T. 41; Exhibit K)

18. [Petitioner's] veterinary medical records do not show any blood work prior to dispensing Rimadyl to Cinnamon, and fail to include a recommendation for follow-up blood work for Cinnamon. (N.T. 4I; Exhibits G and K)

19. The May 16, 2011 entry in [Petitioner's] veterinary medical records for Cinnamon indicated that "H-W Tablet 28" was dispensed to Cinnamon's owner. (N.T. 40; Exhibit G)

8

20. Cinnamon's owner identified the medication as Tri-Heart Plus heartworm medication, Lot # SD0758, with an expiration date of February 2011. (Exhibit H; N.T. 17)

21. The Tri-Heart Plus heartworm medication that [Petitioner] dispensed to Cinnamon's owner on May 6, 2011 had surpassed the manufacture's date of expiration. (N.T. 18; Exhibits H, I, L)

22. [Petitioner] stated [in writing] that heartworm medication "is 6 month package i.e. it is good after the expiration date for 6 month" (sic). (OSC, Exhibit B)

23. [Petitioner] stated [in writing] that "I consider a two month after the expiration date it doesn't affect the potency of the heartworm medication (prevent the H.W.) as it is not antibiotic or had any potency to change." (Exhibit F)

24. Medications that are beyond the manufacturer's expiration date may lose their potency and stability or may undergo other detrimental changes that may affect the medication's effectiveness and/or safety. (Exhibit K)

25. Medication dispensed to an animal must be within the expiration date not only at the time it is dispensed but for the entire treatment period for which the medication is to be used. (N.T. 42)

(A&O, Findings of Fact (F.F.) ¶¶5-25, S.R.R. at 4b-7b.) Petitioner petitioned this Court for review.[6]

---

[6] Petitioner initially filed an appeal of the Board's final order with the Philadelphia County Court of Common Pleas (Common Pleas). On October 21, 2013, Common Pleas issued an order transferring this matter to Commonwealth Court; however, a praecipe to transfer was not filed and the matter remained dormant in the Common Pleas Office of the Prothonotary. On September 9, 2014, Petitioner filed a Petition for Review with this Court that was docketed at No. 1587 C.D. 2014 and was subsequently dismissed as duplicative of Petitioner's Common Pleas appeal. By October 29, 2014 order, this Court granted reconsideration of the dismissal and directed the Board to effectuate transfer of the matter to Commonwealth Court. The Board filed a praecipe to transfer on November 12, 2014 and, on December 1, 2014, the matter was transferred to this Court and docketed at No. 2421 C.D. 2014.

Petitioner argues that the procedure which led the Board to take action against his veterinary license was in error and that he should have been given the opportunity to present his case to the full Board rather than a Hearing Examiner.[7]

Under the Act, when the Department takes disciplinary action against a veterinarian's license by issuing an order to show cause, the procedure that it follows is governed by the Administrative Agency Law[8] and the General Rules of Administrative Practice and Procedure.[9] The General Rules of Administrative Practice and Procedure, often referred to as GRAPP, permit the Board to preside over a disciplinary hearing or to designate a presiding officer to hold the hearing and to issue a proposed report for the Board's review.[10] The ultimate decision on what, if any, action to take lies with the Board; the Board may hold an additional hearing, may make new findings of fact, may alter the sanctions recommended, may reject the proposed report in its entirety, or may adopt the Hearing Examiner's

---

[7] This Court's scope of review of an agency's adjudication is limited to determining whether constitutional rights were violated, whether errors of law were made, and whether necessary findings of fact are supported by substantial evidence. *Nelson v. State Board of Veterinary Medicine*, 863 A.2d 129, 132 n.4 (Pa. Cmwlth. 2004). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Shrader v. Bureau of Professional and Occupational Affairs*, 673 A.2d 1, 2 (Pa. Cmwlth. 1995). An agency's determination will be set aside if the agency has abused its discretion, exceeded its authority or misapplied the law. *Nelson*, 863 A.2d at 132 n.4.

[8] Act of April 28, 1978, P.L. 202, No. 53, *as amended*, 2 Pa. C.S. §§ 501-508.

[9] 1 Pa. Code §§ 31.1-35.251.

[10] *See, e.g.,* 1 Pa. Code § 35.123 ("Hearings will be held before the agency head or a presiding officer designated under Subchapter E (relating to presiding officers)."); 1 Pa. Code § 35.185 ("When evidence is to be taken in a proceeding, either the agency head or, when designated for that purpose, one or more of its members, examiners or other representative appointed according to law, may preside at the hearing."); 1 Pa. Code § 35.187 (detailing the authority delegated to presiding officers, including, *inter alia*, to submit proposed reports); 1 Pa. Code § 35.205 (detailing the required contents of proposed reports).

10

proposed report and order without alteration.[11]  The Act does not require the Board to provide a licensed veterinarian with a hearing in which the licensed veterinarian may directly address the full Board prior to the imposition of sanctions.  Sections 24 and 25 of the Act, 63 P.S. §§ 485.24 ("Disciplinary action authorized") and 485.25 ("Procedure in disciplinary actions").

In Petitioner's disciplinary matter, the Board issued an order delegating the case to the Hearing Examiner for a hearing and the preparation of a proposed report.  The Board's order stated that the hearing and the proposed report would adhere to the requirements of the Administrative Agency Law and the General Rules of Administrative Practice and Procedure.  Following the Board's order, Petitioner received notice, once for the original hearing and again for the rescheduled hearing.  Petitioner was informed of the allegations made by the Department and that he had a right to an attorney, a right to present evidence, and a right to challenge any evidence and cross-examine any witness against him at the

---

[11] As this Court stated in *A.O. v. Department of Public Welfare*, 838 A.2d 35 (Pa. Cmwlth. 2003):

> While a fact finder's observation of the demeanor of a witness has traditionally been viewed as an important factor in determining credibility, administrative adjudicators are permitted to determine the credibility of testimony from the reading of a transcript. Administrative agencies often use a system of adjudication where a hearing examiner or presiding officer takes evidence and the ultimate fact finder is a board or commission, which has the power to make findings of fact based solely on a review of the record. *See, e.g., Kramer v. Department of Insurance*, 654 A.2d 203 (Pa. Cmwlth. 1995) (presiding officer conducted an evidentiary hearing, but the adjudication was issued by the Insurance Commissioner)[.]  An adjudicative method where the ultimate decision in a case is made by an administrative fact finder who did not hear the testimony does not deny a litigant due process of law.

*A.O.*, 838 A.2d at 38 n.5 (internal citations omitted); *see also McDermond v. Foster*, 561 A.2d 70, 72 (Pa. Cmwlth. 1989).

11

hearing.[12] Each of the notices Petitioner received also stated that the General Rules of Administrative Practice and Procedure would govern the disposition of the counts alleged by the Department against Petitioner.

Petitioner chose not to appear at the hearing and chose not to challenge the evidence against him or to cross-examine the Department's witnesses. It is clear from Petitioner's filings that he believed he should have and ultimately would have an opportunity to go before the members of the Board, which include fellow veterinarians and members of the public, and plead his case directly to them. However, Petitioner was repeatedly given notice that he was mistaken and having received notice of his rights, the procedure that would be followed, the allegations made against him, and the possible consequences for his license to practice, Petitioner refused to engage in the disciplinary proceedings before the Hearing Examiner. Petitioner's refusal to engage in the process he was due does not amount to an error in that process or to a violation of Petitioner's rights.

Accordingly, we affirm the order of the Board.

_____
**JAMES GARDNER COLINS, Senior Judge**

---

[12] "Constitutional due process is a flexible concept, and thus, implicates procedural protections as each particular situation demands." *Chester Water Authority v. Pennsylvania Public Utility Commission*, 868 A.2d 384, 391 (Pa. 2005); *Gombach v. Department of State, Bureau of Commissions, Elections & Legislation*, 692 A.2d 1127, 1129-30 (Pa. Cmwlth. 1997). In administrative or quasi-judicial proceedings, including proceedings before the Board, the basic tenets of due process—notice and an opportunity to be heard—are mandated and apply with a force equal to their application in judicial proceedings. *See* 2 Pa. C.S. § 504 ("No adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard. All testimony shall be stenographically recorded and a full and complete record shall be kept of the proceedings."); *Pennsylvania Bankers Association v. Pennsylvania Department of Banking*, 956 A.2d 956, 965 (Pa. 2008).

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Mohamed Ali Hammad, V.M.D., | : |
| | : |
| Petitioner | : |
| | : |
| v. | : No. 2421 C.D. 2014 |
| | : |
| Bureau of Professional and | : |
| Occupational Affairs, State | : |
| Board of Veterinary Medicine, | : |
| | : |
| Respondent | : |

## **O R D E R**


AND NOW, this 10th day of September, 2015, the final order of the Bureau of Professional and Occupational Affairs, State Board of Veterinary Medicine in the above-captioned matter is AFFIRMED.


_____
**JAMES GARDNER COLINS, Senior Judge**