IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joshua Haentges, D.D.S.,               :
                        Petitioner     :
                                       :
        v.                             :   No.  348 C.D. 2022
                                       :   Argued:  September 13, 2023
State Board of Dentistry,              :
                        Respondent     :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, President Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE ELLEN CEISLER, Judge
            HONORABLE LORI A. DUMAS, Judge
            HONORABLE STACY WALLACE, Judge


OPINION
BY JUDGE WALLACE                          FILED:  December 21, 2023


        Joshua Haentges, D.D.S. (Dr. Haentges) petitions for review of the March 16,

2022 order of the State Board of Dentistry (Board), denying his application for dental

licensure by endorsement under 63 Pa.C.S. § 3111(a).  Dr. Haentges challenges the

Board's determination that the licensing requirements of New York State, where he

obtained a license and currently practices dentistry, were not substantially equivalent

to the licensing requirements of Pennsylvania.  After careful review, we reverse and

remand.

## I. Background

Dr. Haentges attended the University at Buffalo School of Dental Medicine, graduating in 2016. Reproduced Record (R.R.) at 114a, 232a. He obtained his New York dental license in 2017 and has been licensed continuously since that time. *Id.* at 71a, 105a. According to Dr. Haentges, he began practicing general dentistry in Addison, New York in 2017. *Id.* at 147a, 248a. He practiced in Addison until a brief period of unemployment in 2020 and now operates his own practice in Watkins Glen, New York. *Id.* at 147a-48a, 248a. Dr. Haentges explains he purchased his practice from a retiring dentist. *Id.* at 149a. The retiring dentist owned two offices, one in Watkins Glen and another in Elkland, Pennsylvania, and agreed to sell on the condition that Dr. Haentges purchase both of them. *Id.* at 149a-150a. Dr. Haentges now operates his dental practice in Watkins Glen but also owns the second Elkland office where he is unable to practice because he lacks a Pennsylvania dental license. *Id.* at 151a. He filed an application for licensure by endorsement in Pennsylvania on May 4, 2021. *Id.* at 227a-29a.

By way of background, Section 3111(a) provides for licensure of certain out-of-state professionals. It provides that a licensing board "shall issue" a license if, among other things, the applicant "[h]olds a current license . . . from another state, territory or country and the licensing board or licensing commission determines that state's, territory's or country's requirements are substantially equivalent to or exceed the requirements established in this Commonwealth." 63 Pa.C.S. § 3111(a)(1). By letter dated July 27, 2021, the Board denied Dr. Haentges' application for licensure. The Board found New York's dental licensing requirements were not substantially equivalent to Pennsylvania's requirements because New York did not require dental

2

applicants to pass a clinical examination. R.R. at 394a-95a. It described a clinical examination as "integral" to the licensure process in Pennsylvania. *Id.* at 394a.

Dr. Haentges filed a written request appealing the Board's determination. He contended that, although New York did not require its applicants to pass a dental clinical examination, it did require the successful completion of "a clinically-based postdoctoral general practice or specialty dental residency program, of at least one year's duration" as well as a "formal outcome assessment evaluation of the resident's competence to practice dentistry." R.R. at 391a (quoting N.Y. Educ. Law § 6604(3) (McKinney 2007)).[1] He maintained New York's residency requirement was "at least 'substantially equivalent'" to a clinical examination. *Id.*

The Board delegated the matter to a hearing examiner, who held a hearing on October 4, 2021. Dr. Haentges participated in the hearing with counsel and was the sole witness to testify.[2] Primarily, Dr. Haentges testified regarding the value of New York's residency requirement based on his experiences and regarding the difficulty he would face if he attempted to complete a dental clinical examination.

Dr. Haentges testified he completed a dental residency at the Stratton Veterans Affairs Medical Center in Albany, New York. R.R. at 120a. He testified New York law requires residents to perform a specific list of procedures, including "two full crowns; two endodontically treated teeth; four restorations, meaning two anterior, two posterior; and one periodontal case." *Id.* at 117a. Dr. Haentges contrasted these minimum requirements with the procedures he actually performed during residency,

---

[1] New York's legislature amended Section 6604(3), effective November 21, 2022. The current version eliminates the words "clinically-based" but is otherwise the same.

[2] Counsel for the Commonwealth also participated in the hearing but did not take a position and expressed his intent to defer to the hearing examiner and the Board. R.R. at 103a.

3

which included 21 crown preparations, 14 endodontic procedures, 197 restorations, and 18 periodontal cases. *Id.* at 135a-42a, 382a.

Further, Dr. Haentges contrasted his experiences as a dental resident with the American Board of Dental Examiners (ADEX) examination, a clinical examination accepted in Pennsylvania. R.R. at 123a-31a, 382a. Dr. Haentges testified the ADEX examination involves only three crown preparations, two restorations, one complete root canal, and one partial root canal. *Id.* In addition, he emphasized his residency was one year long, while the ADEX examination is only two to three days long. *Id.* at 115a, 145a. Dr. Haentges insisted that attempting to take the ADEX examination now would be an arduous process, which might require him to locate live patients and transport them to the examination site.[3] *Id.* at 109a-11a. Moreover, he testified many ADEX examinations are open to dental students but not current dentists.[4] *Id.* at 112a. Dr. Haentges testified he searched for open ADEX examinations the night before the hearing and found that only 11 of the 60 or 65 available examinations were allowing individuals other than dental students to participate. *Id.* at 168a-69a. He added: "for the rest of this year there is only maybe one or two that are open – not open, but have a wait list and are open to outside candidates." *Id.* at 169a-70a.

Despite Dr. Haentges' concern that it would be difficult to find and transport live patients, he acknowledged the ADEX examination does not always require performing procedures on live patients. R.R. at 145a-46a. Dr. Haentges explained

---

[3] Dr. Haentges explained performing the ADEX examination on a live patient required the patient to have a "perfect" dental lesion and a certain health history. R.R. at 109a. He testified: "It has to be this type of lesion, this far in. . . . They have to have a certain blood pressure. They have to . . . have a certain medical history behind them. It's very, very stringent as far as getting patients." *Id.*

[4] He blamed the COVID-19 pandemic for this situation, explaining: "they used to offer multiple exams throughout the year, and I believe that the pandemic has changed that. There's not as many patients coming into the dental schools for treatment." R.R. at 112a.

4

applicants perform the crown preparation and root canal portions of the ADEX examination "on manikins," which means "[t]here's no cheek. There's no patient moving around. There's no coughing or tongue. . . . Which is a big deal in dentistry. . . . there's no patient that needs to be numb." *Id.* at 145a. He explained many ADEX examinations did not require live patients at all but were instead performed entirely using "plastic teeth . . . on a manikin."[5, 6] *Id.* at 170a.

On December 20, 2021, the astute hearing examiner, Michael T. Foerster, Esquire, issued a thorough and carefully crafted proposed adjudication and order granting licensure to Dr. Haentges under Section 3111(a). The hearing examiner concluded New York's dental licensing requirements equaled or exceeded those in Pennsylvania. R.R. at 73a. Specifically, the hearing examiner noted the "extensive" requirements of a New York dental residency and found persuasive Dr. Haentges' testimony that a residency is superior to a clinical examination because it focuses on treating live patients. *Id.* at 80a-81a. The hearing examiner also noted the procedures Dr. Haentges performed during his residency, which exceeded both the requirements of New York law and the procedures performed during the ADEX examination. *Id.* at 84a. The hearing examiner found these procedures showed the

---

[5] The ADEX examination includes a diagnostic computer simulation in which applicants review "some radiographs or maybe a couple pictures . . . and maybe what the patient is saying on the screen" to discern "the proper route of treatment planning." R.R. at 142a. Dr. Haentges questioned the merits of the simulation as well, explaining "you can't ask questions. . . . and you can't feel motion through a computer screen. So . . . it's one of those things where [with] live patients it's just totally different." *Id.* at 143a.

[6] Based on the Department of State's website, it would appear the Board began accepting entirely manikin-based examinations during the COVID-19 pandemic. *See* Pa. Dep't of State, *Waived and Suspended Licensing Regulations*, https://www.dos.pa.gov/Pages/COVID-19-Waivers.aspx (last visited Dec. 12, 2023). When the Court first heard this case as a three-judge panel on December 12, 2022, counsel for the Board explained manikin-based examinations were approved going forward at the Board's September 2022 meeting.

5

value of New York's residency requirement because they "are done over a period of time with a resulting professional maturity that would come with such an endeavor." *Id.* at 85a (footnote omitted). The hearing examiner discussed the legislative intent behind Section 3111(a), which, he asserted, was to "open[ ]up licensure" and remedy the difficult and time-consuming licensure procedures that may discourage out-of-state professionals from coming to Pennsylvania. *Id.* at 85a-86a.

The Board issued a notice of intent to review on December 27, 2021, followed by a final adjudication and order on March 16, 2022. The Board listed several New York licensing requirements it found were substantially equivalent to Pennsylvania licensing requirements. R.R. at 27a-28a. The Board observed, however, that New York requires a written examination and residency, while Pennsylvania requires a written examination and dental clinical examination. *Id.* at 28a. It concluded New York's written examination and residency were not substantially equivalent to, and did not exceed, Pennsylvania's written and dental clinical examinations. *Id.* at 28a-29a.

Regarding New York's residency requirement, the Board reasoned that "[t]he clinical experience of every resident is different, and competency is measured by the subjective opinion of the program director or attending dentist." R.R. at 32a. The Board contrasted this with the purported objectivity of a dental clinical examination, observing the ADEX examination requires all applicants to "perform at a minimum level" and has quantifiable grading standards. *Id.* It characterized Pennsylvania's clinical examination as "an additional measurement of competency in the practice of dentistry that is absent in New York." *Id.* at 29a.

The Board rejected the idea that it should consider Dr. Haentges' "individual experiences," such as the number of procedures he performed during his residency,

6

to determine substantial equivalency. R.R. at 30a. From the Board's perspective, Section 3111(a)(1) permitted it to compare the text of New York's licensing statute and regulations against the text of Pennsylvania's licensing statute and regulations. *Id.* at 30a-32a. Considering anything but the "plain letter of the licensing laws" would be improper, burdensome, and perhaps even "violative of . . . constitutional protections." *Id.* at 30a-31a. The Board rejected the hearing examiner's reliance on public policy considerations as well, asserting there was no reason to believe Section 3111(a)'s purpose was to lower the "quality standard for professionals" licensed in Pennsylvania.[7] *Id.* at 33a.

Dr. Haentges filed a petition for review in this Court. He raises interrelated challenges to the Board's determination that New York's licensing requirements are not "substantially equivalent" to Pennsylvania's licensing requirements.[8]

## II. Discussion

This Court reviews the Board's order for violations of constitutional rights, violations of agency practice and procedure, and other legal errors. 2 Pa.C.S. § 704. In addition, we review whether substantial evidence supports the Board's necessary factual findings. *Id.* We may disturb the Board's order if it committed an abuse of its discretion, exceeded its authority, or misapplied the law. *Hammad v. Bureau of Pro. & Occupational Affs., State Bd. of Veterinary Med.*, 124 A.3d 374, 380 n.7 (Pa. Cmwlth. 2015) (citing *Nelson v. State Bd. of Veterinary Med.*, 863 A.2d 129, 132 n.4 (Pa. Cmwlth. 2004)).

---

[7] Because the Board found no substantial equivalency, it declined to address the other factors at Section 3111(a)(2)-(5), giving the evidence in support of them "no weight." R.R at 33a.

[8] Although it is absent from the certified record, the reproduced record contains an application for reconsideration Dr. Haentges filed on March 30, 2022. Dr. Haentges and the Board state in their respective briefs that the Board did not rule on the application. Dr. Haentges' Br. at 7; Board's Br. at 23.

Our research has uncovered no previous decisions applying Section 3111(a) or Pennsylvania's predecessor licensure by endorsement statute, which contained the same language.[9] Section 3111 provides as follows:

> **(a) General rule.--**Notwithstanding any existing provisions related to licensure by endorsement or licensure by reciprocity in an applicable licensing statute, a licensing board or licensing commission shall issue a license, certificate, registration or permit to an applicant to allow practice in this Commonwealth if, upon application to the licensing board or licensing commission, the applicant satisfies all of the following conditions:
>
>> (1) Holds a current license, certificate, registration or permit from another state, territory or country and the licensing board or licensing commission determines that state's, territory's or country's requirements are substantially equivalent to or exceed the requirements established in this Commonwealth.
>>
>> (2) Demonstrates competency in the profession or occupation through methods determined by the licensing board or licensing commission, including having completed continuing education or having experience in the profession or occupation for at least two of the five years preceding the date of the application under this section.
>>
>> (3) Has not committed any act that constitutes grounds for refusal, suspension or revocation of a license, certificate, registration or permit to practice that profession or occupation in this Commonwealth unless the licensing board or licensing commission determines, in its discretion, that the act should not be an impediment to the granting of a license, certificate, registration or permit to practice in this Commonwealth.

---

[9] The language now found at 63 Pa.C.S. § 3111 originally appeared in the Act of July 2, 1993, P.L. 345, *as amended*, added by Section 1 of the Act of July 1, 2019, P.L. 292, *formerly* 63 P.S. § 2206.1. The General Assembly repealed and replaced the Act of July 2, 1993, P.L. 345, by the Act of July 1, 2020, P.L. 575, resulting in the current codification at 63 Pa.C.S. § 3111.

(4) Is in good standing and has not been disciplined by the jurisdiction that issued the license, certificate, registration or permit unless the licensing board or licensing commission determines, in its discretion, that the discipline should not be an impediment to the granting of a license, certificate, registration or permit to practice in this Commonwealth.

(5) Pays any fees established by the licensing board or licensing commission by regulation.

**(b) Provisional endorsement license.--**A licensing board or licensing commission may issue a provisional license, certificate, registration or permit to an applicant for licensure by endorsement while the applicant is satisfying remaining requirements for the licensure by endorsement as determined by the licensing board or licensing commission. The holder of a provisional endorsement license issued under this subsection may practice until any of the following occurs:

(1) A license, certificate, registration or permit is denied by the licensing board or licensing commission under this section.

(2) The expiration of the provisional endorsement license as established by the licensing board or licensing commission by regulation.

(3) The holder of the provisional endorsement license fails to comply with the terms of the provisional license.

**(c) Construction.--**Nothing in this section is intended to supersede or replace existing statutory provisions relating to licensure by endorsement or licensure by reciprocity applicable to licensing boards and licensing commissions through their respective enabling statutes.

63 Pa.C.S. § 3111.

As we have summarized, New York law at the time of the proceedings below required that applicants "pass a written examination" and successfully complete "a clinically-based postdoctoral general practice or specialty dental residency program, of at least one year's duration, in a hospital or dental facility accredited for teaching

9

purposes by a national accrediting body approved by the department."  N.Y. Educ. Law § 6604(3) (McKinney 2007).  Additionally, it required that residencies "include a formal outcome assessment evaluation of the resident's competence to practice dentistry acceptable to the department."  *Id.*  For applicants completing a "general practice" residency,[10] this evaluation required a "notarized written statement by the residency program director attesting that the applicant" successfully completed the residency "and is in the director's judgment competent to practice dentistry."  N.Y. Comp. Codes R. & Regs. tit. 8, § 61.18(b)(3)(i)(a) (2020).  The evaluation further required a notarized statement or statements "by the residency program director who supervised the dental procedures performed by the applicant, and/or the attending dentist(s) who supervised the dental procedures," attesting the applicant performed "independently, and to generally accepted professional standards for dentistry, two full crowns, two endodontically treated teeth, four restorations (two anterior, two posterior) and one periodontal case during the accredited residency program."[11, 12] N.Y. Comp. Codes R. & Regs. tit. 8, § 61.18(b)(3)(i)(b) (2020).

In Pennsylvania, Section 3(c) of The Dental Law[13] provides the Board with the power to license applicants "after examination."  63 P.S. § 122(c).  The Board may "prescribe the subjects, character, manner, time and place of examinations,"

---

[10] Dr. Haentges testified he completed a general practice residency.  R.R. at 177a.

[11] For specialty residencies, an attestation regarding the procedures an applicant performed was not necessary.  N.Y. Comp. Codes R. & Regs. tit. 8, § 61.18(b)(3)(ii) (2020).  Despite this, New York law defined a specialty residency as one where "at least 50 percent of the accredited residency program consists of clinical training."  N.Y. Comp. Codes R. & Regs. tit. 8, § 61.18(b)(2) (2020).

[12] As of 2023, New York's licensing regulations no longer require a residency to include a specific number of completed procedures.

[13] Act of May 1, 1933, P.L. 216, *as amended*, 63 P.S. § 122(c).

among other things, and "issue licenses and certificates to such applicants as successfully pass such examination." 63 P.S. § 122(e). The Pennsylvania Code provides that applicants "shall pass the National Board Dental Examination (written examination) and the dental clinical examination administered by" one of five testing agencies.[14] 49 Pa. Code § 33.103(a). Neither the Dental Law nor the Pennsylvania Code specify the requirements of any dental clinical examination.

Dr. Haentges argues the Board erred by requiring New York's dental licensing requirements to be exactly equivalent rather than "substantially equivalent" to the licensing requirements in Pennsylvania. Dr. Haentges' Br. at 14-18. Moreover, he contends the Board did not consider evidence that New York's requirements exceed Pennsylvania's requirements. *Id.* at 19-20. Dr. Haentges maintains that both New York and Pennsylvania seek to ensure the clinical competency of applicants, but that New York relies on a year-long residency with "live patients in real life scenarios" while Pennsylvania relies on "a two-day clinical examination in a controlled and sterile environment." *Id.* at 16-19 (footnote omitted). He describes the numerous procedures he completed during his residency and dental practice as "evidence of the validity of New York's approach to clinical competency" and asserts the Board's reasoning that a residency is more subjective than a dental clinical examination lacks evidentiary support. *Id.* at 17-19, 22-23, 26-27. Dr. Haentges discusses legislative history underlying Section 3111(a), including statements by members of the General

---

[14] Agencies listed include the "North East Regional Board of Dental Examiners, Inc. (NERB)." 49 Pa. Code § 33.103(a)(1). At the hearing, Dr. Haentges agreed the NERB changed its name to the Commission on Dental Competency Assessments in 2015, and it is the agency that administers the ADEX examination. R.R. at 124a.

11

Assembly regarding the statute's goal of helping qualified professionals from other states obtain licensure in Pennsylvania.[15]  *Id.* at 11-13.

An applicant is entitled to licensure under Section 3111(a)(1) if "the licensing board . . . determines" that licensing requirements of an applicant's state, territory, or country are "substantially equivalent to or exceed the requirements established in this Commonwealth."[16]  63 Pa.C.S. § 3111(a)(1).  It is therefore within the Board's discretion to determine substantial equivalency.  Nonetheless, we agree with Dr. Haentges that the Board exercised its discretion in this matter based on an erroneous

---

[15] Dr. Haentges relies in part on a report of the American Dental Association, among other entities, entitled "Report of the Task Force on Assessment of Readiness for Practice."  Dr. Haentges' Br. at 19-26.  Dr. Haentges did not present this report during the hearing but apparently included it for the first time as an attachment to his application for reconsideration.  R.R. at 6a.  The parties agree, as noted, that the Board did not rule on Dr. Haentges' application.  Dr. Haentges' Br. at 7; Board's Br. at 23.  Accordingly, the report was never admitted into the record, and we do not consider it in this appeal.

[16] The Dissent focuses on language in Section 3111(c), explaining the licensure by endorsement provisions in Section 3111(a) do not "replace or supersede" any previously existing licensure by endorsement or reciprocity provisions.  63 Pa.C.S. § 3111(c).  The problem with this reasoning is that Section 3111(a) applies "**[n]otwithstanding any existing provisions** related to licensure by endorsement or licensure by reciprocity in an applicable licensing statute."  63 Pa.C.S. § 3111(a) (emphasis added).  Section 3111(c) simply means that the General Assembly did not intend Section 3111(a) to prevent applicants from obtaining licensure under any previous statutory provisions.  In other words, if an applicant was eligible for reciprocity under a previous provision, he or she would remain eligible for reciprocity and would not need to pursue licensure under Section 3111(a).  We note our interpretation is consistent with guidance on the Department of State's website, describing licensure under Section 3111 as "yet another option for the boards to consider applicants licensed in other jurisdictions," which applies "[i]f a board's existing endorsement/reciprocity options do not provide a means of licensure."  Pa. Dep't of State, *Applying for a professional license from outside Pennsylvania*, https://www.dos.pa.gov/ProfessionalLicensing/Pages/Act-41-2019.aspx (last visited Dec. 12, 2023).  The Dissent's view, that Section 3111(a) applies "[n]otwithstanding any existing provisions"—except when those provisions are different—renders the language meaningless. *See* 63 Pa.C.S. § 3111(a).  The only relevance the previous licensure by endorsement provision at Section 3(f) of The Dental Law, 63 P.S. § 122(f), has to our analysis today is to illustrate the type of unduly burdensome licensing requirements our General Assembly moved away from by enacting Section 3111(a) into law.

12

interpretation of Section 3111(a)(1)'s statutory language. "Substantially equivalent" simply means the licensing requirements of an applicant's state, territory, or country, when viewed as a whole, must be equal in their essential respects, or largely equal, to Pennsylvania's licensing requirements.[17]  For example, Section 2 of the CPA Law[18] expressly defines "substantial equivalency." Substantial equivalency includes the fact that "the education, examination and experience requirements contained in the statutes and regulations of another jurisdiction are comparable to or exceed the education, examination and experience requirements contained in this act."  63 P.S. § 9.2.

This plain language reading of Section 3111(a)(1) supports the conclusion that New York's licensing requirements were substantially equivalent to Pennsylvania's licensing requirements.  Both New York and Pennsylvania required applicants to complete a written examination and a clinical component—a residency in New York and a clinical examination in Pennsylvania.  These clinical components sought to ensure that only applicants with established clinical skills received licensure.  They served the same purposes and were functionally interchangeable.  This is particularly clear because New York previously required a clinical examination.  A review of New York law reveals the state eliminated its clinical examination and replaced it

_____

[17] An "equivalent" is something "equal in force, amount, or value." Merriam-Webster's Collegiate Dictionary 392-93 (10th ed. 1997).  Other relevant definitions include: "corresponding or virtually identical esp[ecially] in effect or function" and "equal in might or authority." *Id.* at 393.  Relevant definitions of "substantial" include "important, essential," and "being largely but not wholly that which is specified." *Id.* at 1174.

[18] Act of May 26, 1947, P.L. 318, *as amended*, 63 P.S. § 9.2.  A "CPA" is a certified public accountant.

with a residency, effective December 31, 2006.[19] *See* N.Y. Comp. Codes R. & Regs. tit. 8, § 61.2(a)(1)(ii), (9) (2006) (requiring individuals who satisfy certain criteria "on or before December 31, 2006," to complete an "examination in clinical dentistry," but permitting them to "substitute successful completion of a residency program"). The New York legislature made this change via a series of bills beginning in 2002.[20] *See* 2002 N.Y. Sess. Laws Ch. 143 (McKinney).

The Board failed to engage in a plain language reading of Section 3111(a)(1)'s substantial equivalency requirement when reaching a decision in this case. Instead

---

[19] Counsel for the Board noted at oral argument that approximately seven states accept either a clinical examination or a residency, which further signals the requirements are interchangeable.

[20] A legislative memorandum in support of the change provides the following justification:

> This bill would mandate the completion of an accredited clinically-based postdoctoral general practice or specialty dental residency programs in order to obtain a dental license. The bill recognizes that the extensive and intensive supervised practical skills training, as well as the additional academic instructions of a postdoctoral dental residency program, establishes competency for purposes of licensure. The bill acknowledges the value of the additional clinical training for applicants for dental licensure.

> This bill is consistent with the State Education Department's reliance upon approved residency in medicine and podiatry to provide necessary training and experience for licensure. There is no rationale for creating a different standard for the acceptability of a dental resident's training as compared to medicine and podiatry. Moreover, this bill provides the experience requirement - independent of the examination requirement - that had previously been missing for dental licensure.

> The bill acknowledges the benefits of measuring dental competency over a period of time as opposed to the current one-day clinical examination. Moreover, by requiring a residency program for licensure, the public will be better protected and the dental profession improved by measuring dental competency over a longer period of time and requiring additional experience and training, as is required in the medical field. Residents will also benefit from the opportunity to treat patients in a setting other than a dental school.

*New York State Assembly Memorandum in Support of Legislation*, N.Y. Bill Jacket, 2004 A.B. 6065.

of considering whether New York's dental licensing requirements were essentially equal, largely equal, or in excess of Pennsylvania's requirements, the Board denied licensure to Dr. Haentges because a residency and a clinical examination were not exactly the same. The Board suggests in its brief that no residency, no matter how stringent, could substitute for a clinical examination. *See* Board's Br. at 14 ("A state whose licensing requirements do not include a clinical dental examination is not substantially equivalent to Pennsylvania.").

The Board also discussed why it believed a residency could not be as effective as a clinical examination for ensuring the "competency" of applicants. Determining whether licensing requirements are substantially equivalent will necessarily require the Board to consider whether a dentist licensed in another jurisdiction can provide dental care safely and competently to Pennsylvania's standards. Still, it is significant that the statute requires review of an applicant's competency in Section 3111(a)(2), separate from Section 3111(a)(1)'s substantial equivalency determination. *See* 63 Pa.C.S. § 3111(a)(2). To the extent the Board believed a one-year residency was less capable of establishing competency than an examination lasting as little as two days, our legislature ensured that only applicants who demonstrate competency can obtain licensure by endorsement. Section 3111(a) provides other safeguards as well, including requirements that an applicant cannot have committed any act that would be grounds for the loss of a license in Pennsylvania, and that an applicant must be in good standing and not subject to discipline in his or her own jurisdiction. 63 Pa.C.S. § 3111(a)(3), (4).

We agree with the Board that Section 3111(a)(1) requires consideration of the licensing "requirements" of an applicant's state, territory, or country, rather than an applicant's individual experiences. It is important to add, however, that the Board

15

violated its own rule and looked beyond Pennsylvania law to justify a decision that New York's licensing requirements were not substantially equivalent. The critical qualities of a dental clinical examination on which the Board relied, grading criteria and objectivity, do not appear in Pennsylvania's licensing statute and regulations.[21] Section 3(c) of The Dental Law provides for licensure "after examination."[22] 63 P.S. § 122(c). The Pennsylvania Code provides applicants must pass "the dental clinical examination administered by" one of five enumerated testing agencies. 49 Pa. Code § 33.103(a). Pennsylvania law does not state what its clinical examination's grading criteria must be, nor does it include controls to ensure objectivity. Just as New York delegates competency assessments to residency programs, Pennsylvania delegates those assessments to testing agencies.[23] If the Board had truly limited its analysis to the "plain letter of the licensing laws," R.R. at 31a, it would have compared what New York's licensing statute and regulations required—a one-year residency, during which the applicant performs certain procedures with supervision from experienced dentists, who then determine if he or she is competent—versus what Pennsylvania's

---

[21] At oral argument before this panel, counsel for the Board explained the ADEX examination eliminates "outlier" scores by using three graders to evaluate each applicant's performance. We note the fact that it is possible for an "outlier" score to exist demonstrates the ADEX examination is not wholly objective.

[22] The Dissent's discussion of the "examination" requirement in Section 3(c) and (e) of The Dental Law is misguided. Section 3(c) does not require a "clinical examination," and both Pennsylvania and New York require written examinations. More importantly, the same General Assembly that long ago expressed its preference for an examination in The Dental Law more recently enacted Section 3111(a)(1), providing for licensure based on "substantially equivalent," rather than equal requirements. 63 Pa.C.S. § 3111(a)(1).

[23] Dr. Haentges makes a similar point in his brief and reply brief. *See* Dr. Haentges' Br. at 17 n.5; Dr. Haentges' Reply Br. at 2 n.2.

16

licensing statute and regulations required—a clinical examination, with no apparent minimum standards.

Ultimately, even if the Board did not commit an error of law in interpreting Section 3111(a)(1)'s statutory language, its decision was an abuse of discretion. We have emphasized the value of deference to boards and commissions because of their members' expertise. *See Troiani Grp. v. City of Pittsburgh Bd. of Appeals*, 273 A.3d 43, 55-57 (Pa. Cmwlth. 2022) (collecting cases). The fact that this Court may have a different opinion is insufficient to interfere with an agency's actions, and we may not substitute judicial discretion for administrative discretion. *Gwynedd Dev. Grp., Inc. v. Dep't of Lab. & Indus., Bureau of Lab. Standards*, 666 A.2d 365, 370 (Pa. Cmwlth. 1995) (citing *Lynch v. Urb. Redevelopment Auth. of Pittsburgh*, 496 A.2d 1331 (Pa. Cmwlth. 1985)). That said, for the reasons discussed above, New York's licensing requirements were substantially equivalent to, or exceeded, Pennsylvania's licensing requirements by any reasonable measure. Indeed, if given the choice, it is doubtful anyone would prefer to undergo a dental procedure performed by a newly licensed dentist who completed a two-day exam on a manikin over a newly licensed dentist who completed a year-long residency training and performing procedures on live patients. Although the Board attempts to justify its decision by implying that Dr. Haentges and other similarly situated dentists would lower the "quality standard for professionals" licensed in Pennsylvania, R.R. at 33a, we can find no support for the Board's concerns under the applicable law and the circumstances of this case.[24]

---

[24] Our decision applies only to New York's residency requirement as it existed when Dr. Haentges obtained his dental license and applied for licensure by endorsement in Pennsylvania. We express no opinion on the substantial equivalence of New York's current residency requirement.

17

### III. Conclusion

Accordingly, we must reverse the Board's March 16, 2022 order, denying Dr. Haentges licensure by endorsement under Section 3111(a)(1). Because the Board considered only Section 3111(a)(1) when reaching its decision, we remand for the Board to consider the remaining factors at 63 Pa.C.S. § 3111(a)(2)-(5). The Board shall issue a new order from which appeal may be taken within 45 days of the date of this decision.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joshua Haentges, D.D.S.,                    :
                         Petitioner         :
                                            :
          v.                                :   No.  348 C.D. 2022
                                            :
State Board of Dentistry,                   :
                         Respondent         :

# **O R D E R**

**AND NOW**, this 21st day of December 2023, the State Board of Dentistry's (Board) March 16, 2022 order is **REVERSED** with respect to 63 Pa.C.S. § 3111(a)(1).  The case is **REMANDED** for the Board to consider the factors at 63 Pa.C.S. § 3111(a)(2)-(5).  The Board shall issue a new order from which an appeal may be taken within 45 days of the date of this decision.

Jurisdiction relinquished.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joshua Haentges, D.D.S., : 
               Petitioner : 
                : 
                : 
      v. : 
                : 
State Board of Dentistry, : No. 348 C.D. 2022
            Respondent : Argued: September 13, 2023


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge
             HONORABLE ELLEN CEISLER, Judge
             HONORABLE LORI A. DUMAS, Judge
             HONORABLE STACY WALLACE, Judge


DISSENTING OPINION
BY JUDGE FIZZANO CANNON              FILED: December 21, 2023


       I respectfully dissent. I do not believe the Board committed any error of law or abused its discretion in denying the license application of Joshua Haentges, D.D.S. (Dr. Haentges).

       As the majority observes, Section 3(c) and (e) of The Dental Law[1] empowers the State Board of Dentistry (Board) to issue licenses to applicants "after examination"[2] – specifically, "to such applicants as successfully pass such examination." 63 P.S. § 122(c) & (e). Section 3(f) of The Dental Law allows the

---

[1] Act of May 1, 1933, P.L. 216, *as amended*, 63 P.S. §§ 120-130*l*.

[2] Pursuant to the examination requirement of this enabling statute, the Board's implementing regulation requires that "[c]andidates for licensure shall pass the National Board Dental Examination (written examination) and the dental clinical examination administered by one of the [designated examining agencies]." 49 Pa. Code § 33.103(a).

Board to accept and endorse as valid a license issued in another state, where that state's standards "are, in the opinion of the [B]oard, equal to the standards of this Commonwealth . . . ." 63 P.S. § 122(f) (emphasis added).

Section 3111(a)(1) of Title 63 of the Pennsylvania Consolidated Statutes provides generally for reciprocal professional licensure where "the licensing board or licensing commission determines that state's . . . requirements are substantially equivalent to or exceed the requirements established in this Commonwealth." 63 Pa.C.S. § 3111(a)(1). However, Section 3111(c) provides guidance on the proper construction of Section 3111 by stating that "[n]othing in this section is intended to supersede or replace existing statutory provisions relating to licensure by endorsement or licensure by reciprocity applicable to licensing boards and licensing commissions through their respective enabling statutes." 63 Pa.C.S. § 3111(c).[3]

Here, the legislature's specific requirement of an examination in The Dental Law defines the parameters of the Board's discretion in determining whether another state's standards are equal to those of Pennsylvania. The Board did not commit an error of law by determining that a residency and an examination are not equal within the meaning of Section 3(f).[4]

---

[3] Although, as the majority observes, Section 3111(a) applies notwithstanding other statutory provisions, Section 3111(c) is specifically titled "Construction." Thus, in guiding the construction of Section 3111, Section 3111(c) effectively limits the effect of Section 3111(a) where, as here, an enabling statute imposes an express requirement that differs from the substantial equivalency provision of Section 3111(a). See 63 Pa.C.S. 3111(c). In any event, Section 3111(a) does not eliminate the Board's discretion to determine substantial equivalency, which is discussed below.

[4] Regarding the majority's suggestion that The Dental Law's examination requirement lacks grading criteria and objectivity requirements, I note that Dr. Haentges has not raised that issue.

CFC - 2

The Board likewise did not abuse its discretion in determining that New York's residency requirement is not substantially equivalent to Pennsylvania's clinical examination requirement. The majority cites the definition of "substantial equivalency" in Section 2 of the CPA Law,[5] 63 P.S. § 9.2, as illustrating that licensing requirements in different jurisdictions need not be identical to be substantially equivalent. I do not disagree with that general premise. Nonetheless, the Board has broad discretion in considering whether another jurisdiction's licensing requirements are substantially equivalent to those in Pennsylvania. Specifically, the Board had discretion here to determine whether a residency is substantially equivalent to Pennsylvania's clinical examination.

The majority correctly recognizes the high level of deference courts owe to the Board because of its expertise in applying its enabling statute. However, the majority's opinion then weighs the relative desirability of a residency versus a clinical examination in evaluating an applicant's qualifications for licensure and concludes that the Board's (and, by implication, the legislature's) preference for an examination is not reasonable. Respectfully, I believe that in doing so, the majority's analysis has impermissibly substituted this Court's judgment for that of the Board.

In short, I do not believe the Board committed legal error or abused its broad discretion in determining that fulfilling New York's residency requirement did not entitle Dr. Haentges to forgo Pennsylvania's clinical examination in seeking a license to practice dentistry in Pennsylvania. For that reason, I dissent.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[5] Act of May 26, 1947, P.L. 318, *as amended*, 63 P.S. §§ 9.1-9.16b.